**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHAD NEWTON,

    Plaintiff,

v.                                                  Case No. 12-10895

STATE FARM FIRE & CASUALTY CO.,

    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CANCELLING JUNE 20, 2012 MOTION HEARING**

Before the court is Defendant State Farm Fire & Casualty Co.'s motion for summary judgment in this insurance-coverage dispute involving a fire at a residential property. The motion has been fully briefed, and the court determines a hearing to be unnecessary. *See* E.D. Mich. LR 7.1(f)(2). Because Plaintiff Chad Newton lacked an insurable interest in the property when the fire loss occurred, the court will grant summary judgment to Defendant.

**I.  BACKGROUND**

The facts in this matter are largely undisputed. Plaintiff and his wife ("the Newtons") formerly owned a residential property located at 46705 Kozma Street in Sumpter, Michigan (the "property"). The property was insured under a homeowners policy issued by Defendant (the "policy") to Plaintiff's now-deceased parents. (Def.'s Ex. B, Dkt. # 7-4.)[1] In November 2011, the Newtons sold the property to their relatives

---

[1] For the purposes of its summary judgment motion, Defendant does not dispute Plaintiff's right to present claims under his parents' policy. (Br. Supp. Def.'s Mot. Summ. J. 1 n.1, Dkt. # 7.) The court therefore declines to decide whether Plaintiff is foreclosed

William and Marjorie Holton ("the Holtons"), who had already been living in it as tenants. (Def.'s Ex. F, 2, Dkt. # 7-8.)

On November 8, 2011, the Newtons and the Holtons met for a closing of the sale. At that time, the Newtons executed a warranty deed conveying the property to the Holtons. (Def.'s Ex. C, Dkt. # 7-5.) The Holtons, in turn, provided a cashier's check for $83,601.06—the purchase price for the property—and a personal check made out to the title insurance company for $2221.06—the remaining expenses associated with the transaction, which included $415.66 in prorated taxes to be paid to the Newtons. (Def.'s Ex. G, Dkt. # 7-9; Def.'s Ex. H, Dkt. # 7-10; Newton Aff., Dkt. # 9, at 14.) The Holtons also executed several documents indicating they assumed responsibility for all outstanding and prorated property taxes, utility bills, and other assessments on the property. (Def.'s Ex. H; Def.'s Ex. J, Dkt. # 7-12; Def.'s Ex. K, Dkt. # 7-13; Def.'s Ex. L, Dkt. # 7-14.) The checks and documents were placed into escrow, and it was not until a few days later that the checks conveyed by the Holtons cleared and the Newtons' mortgage on the property was satisfied with the proceeds of the sale. (Def.'s Ex. F, 3; Def.'s Ex. O, 2-3, Dkt. # 7-17; Newton Aff., Dkt. # 9, at 13-14.)

The closing concluded between 5:30 p.m. and 6:00 p.m., after which the Holtons returned to the property for the night. (Def.'s Ex. F, 3.) A few hours later, at approximately midnight on November 9, 2012, William Holton accidentally ignited gasoline fumes emanating from a generator being used to power the home, causing a fire that damaged the property. (*Id.*; Def.'s Ex. M, Dkt. # 7-15.) Plaintiff made a claim

---

from recovering under an insurance policy that does not name him as the insured and will treat the policy as if it were issued to Plaintiff.

under the policy. After conducting an investigation, on November 29, 2011, Defendant denied the claim on the grounds that Plaintiff "had no insurable interest in the dwelling at the time of loss." (Def.'s Ex. N., Dkt. # 7-16.)

On February 1, 2012, Plaintiff initiated this lawsuit in the Wayne County Circuit Court, challenging Defendant's denial of his insurance claim. Defendant removed the action to this court on February 28, 2012, and filed the instant motion for summary judgment on April 18, 2012.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific

3

facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

Defendant contends that it is entitled to summary judgment under the terms of the policy because Plaintiff had no insurable interest in the property at the time of the fire. The policy contains the following limitation of liability:

> **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:
>
> a. to the insured for an amount greater than the insured's interest . . . .

(Def.'s Ex. B, 7.) Under Michigan law,[2] "[w]hether an individual has an insurable interest is not determined by the label attached to the insured's property right, but rather by whether the individual will suffer a direct pecuniary loss as a result of the destruction of the property." *Secura Ins. Co. v. Pioneer State Mut. Ins. Co.*, 470 N.W.2d 415, 416 (Mich. Ct. App. 1991) (per curiam) (citing *Crossman v. Am. Ins. Co. of Newark, N.J.*, 164 N.W. 428, 429 (Mich. 1917)).

Defendant persuasively argues that the ownership of the property transferred from the Newtons to the Holtons at the closing on November 8, 2011, so that the damage caused by the fire later that night no longer posed a risk of pecuniary loss to Plaintiff. In a real estate transaction, the closing is generally understood to be "the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred." *Black's Law Dictionary* (9th ed. 2009). At the closing between the Newtons and the Holtons, the Newtons signed title

---

[2] "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

over to the Holtons by execution of a warranty deed, the Holtons provided payment in the form of two checks, and the Holtons assumed responsibility for all outstanding bills associated with the property. Nothing further was required from either the Newtons or the Holtons to consummate the transaction.

Plaintiff disputes none of these facts, but rather maintains that the parties' transaction was not complete because the Holtons provided a personal check to satisfy a portion of the amount owed at closing. According to Plaintiff, this was contrary to the terms of the purchase agreement[3] and delayed the moment of sale until that check was honored by the payor bank. See Mich. Comp. Laws § 440.3310(2)(a) (declaring that provision of uncertified check does not discharge an obligation until check is paid or certified). As a result, Plaintiff asserts, he could "rely[] upon the . . . property as security or collateral" until the Holtons' "promise to pay" the amount of the check was satisfied.

Plaintiff's argument finds little support in the record or in the law. As an initial matter, Plaintiff fails to acknowledge that the Holtons did provide a cashier's check for the $83,601.06 purchase price for the property. See id. § 440.3310(1) ("Unless otherwise agreed, if a . . . cashier's check . . . is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation."). The personal check provided by the Holtons was to cover various closing fees and prorated taxes on the property. While payment of the sales price for the property might reasonably be

---

[3] Both Plaintiff and Defendant neglected to provide the court with a copy of the purchase agreement for the property, so the court is unable to determine whether it prohibited payment by personal check. As Defendant does not challenge this assertion, the court will assume the purchase agreement did contain such a provision.

6

considered a condition precedent to the transfer of ownership, *see, e.g.*, *Bank of Columbia v. Hagner*, 26 U.S. 455, 464-65 (1828) (noting seller's payment of contract price and buyer's conveyance of property are usually dependent covenants in land-sale contracts), Plaintiff provides no evidence that transfer was contingent on payment of those fees or taxes or that he retained any interest in the property as security for such payment. On the contrary, there is nothing at all to suggest that Plaintiff, in executing the warranty deed conveying the property to the Holtons and delivering it to escrow, intended anything other than to transfer his interest in the property to the Holtons. *See Hooker v. Tucker*, 56 N.W.2d 246, 249 (Mich. 1953) (stating that transfer of ownership occurs when grantor presents deed to grantee, or third party acting on behalf of grantee, with intention to perfect transaction).

Moreover, the Michigan Court of Appeals has already rejected Plaintiff's argument. A vendor's insurable interest in a property terminates on the date of closing. *Secura Ins.*, 470 N.W.2d at 416. In *Farm Bureau Mutual Insurance Co. of Michigan v. Hastings Mutual Insurance Co.*, No. 264930, 2006 WL 73756 (Mich. Ct. App. Jan. 12, 2006) (unpublished per curiam opinion), the court of appeals decided whether a seller retained an insurable interest in a property after the parties met for a "closing" but the buyer's lender had yet to provide the balance of the purchase price. The plaintiff in *Farm Bureau*, like Plaintiff here, asserted that the closing did not occur, and the seller's insurable interest in the property did not terminate, until full payment was received by the seller. *Id.* at *1. The court of appeals disagreed, noting that "both the seller and the buyer performed all acts required on their part to complete the real estate transaction" at the closing meeting, when "[t]he executed warranty deed, as well as the buyers' down

7

payment, was placed into escrow, and the buyers took possession of the property." *Id.* Because "no further action on the part of the sellers or the buyer was required" to complete the transaction, the court reasoned, "the risk of loss passed to the buyers under the plain terms of the purchase agreement." *Id.*; *see also Swanson v. Minn. FAIR Plan*, No. A03-367, 2003 WL 22787267, at *2-*3 (Minn. Ct. App. Nov. 25, 2003) (unpublished opinion).

Like the parties in *Farm Bureau*, the Newtons and the Holtons "performed all acts required on their part to complete the real estate transaction," *Farm Bureau*, 2006 WL 73756, at *1, during their meeting on November 8, 2011. In fact, the Holtons did *more* than the buyers in *Farm Bureau*, in that the Holtons actually provided a cashier's check for the purchase price of the property, not just a down payment. All that remained was for the check to be presented to the bank and the funds applied to the Newtons' mortgage, a process that would be completed by the escrow agent without any further action from the Newtons or the Holtons. Under these circumstances, there is no basis for concluding that the sale of the property was not complete or that Plaintiff otherwise retained an insurable interest in the property after the closing meeting. Given that the fire occurred after that meeting, the court will grant summary judgment for Defendant.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 7] is GRANTED.

IT IS FURTHER ORDERED that the June 20, 2012 motion hearing is CANCELLED.

        s/Robert H. Cleland               
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  June 12, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 12, 2012, by electronic and/or ordinary mail.

        s/Lisa G. Wagner                
        Case Manager and Deputy Clerk
        (313) 234-5522